**THE ATKIN FIRM, LLC**
Formed in the State of New Jersey
By: John C. Atkin, Esq.
55 Madison Avenue, Suite 400
Morristown, NJ 07960
Tel.: (973) 314-8010 / Fax: (833) 693-1201
JAtkin@atkinfirm.com
*Attorneys for Plaintiff Strike 3 Holdings, LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STRIKE 3 HOLDINGS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>JOHN DOE subscriber assigned IP address 173.63.166.25,<br><br>Defendant. | Case No. 2:20-cv-10202-SRC-CLW<br><br>**MOTION RETURN DATE:**<br>October 5, 2020<br><br>***Document Filed Electronically*** |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF APPEAL OF MAGISTRATE JUDGE'S TEXT ORDER DENYING LEAVE TO FILE A DISCOVERY MOTION

Of Counsel and on the brief:
John C. Atkin, Esq.

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................1

BRIEF FACTUAL & PROCEDURAL BACKGROUND........................................1

LEGAL ARGUMENT ............................................................................6

   I.    STANDARD OF REVIEW..........................................................6

   II.   THE DECISIONS RELIED UPON BY THE MAGISTRATE
        JUDGE DO NOT SUPPORT THE DENIAL OF LEAVE TO
        FILE A MOTION TO CONDUCT EARLY DISCOVERY....................7

       A.  *Judge Schneider's Opinion* Was Reversed. ...............................7

       B.  *Peled* Did Not Concern Early Discovery. ................................10

   III.  THERE IS GOOD CAUSE TO GRANT PLAINTIFF EARLY
        DISCOVERY TO IDENTIFY THE ANONYMOUS DEFENDANT ....18

       A.  Plaintiff's Complaint States A *Prima Facie* Claim for Direct
          Copyright Infringement. ........................................................21

       B.  The Timing of the Request Favors Granting Relief................................25

       C.  The Request is Narrowly Tailored and Identifies the Limited
          and Specific Information Sought.............................................25

       D.  The Purpose of the Requested Discovery and the Need for the
          Information Sought to Advance the Claim Favors Granting Relief. .......27

       E.  The Discovery Does Not Burden Doe or Require Doe to Respond
          in an Expedited Manner........................................................29

       F.  There Are No "Alternative Means" to Uncover Doe's True Identity......29

       G.  Doe's Minimal Privacy Interest Is Substantially Outweighed by
          Plaintiff's Interest in Protecting Its Copyrights......................................31

CONCLUSION ....................................................................................34

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001) ............................................................................23

*Abdulai v. Ashcroft*,
  239 F.3d 542 (3d Cir. 2001) ..............................................................................8

*Alston v. Parker*,
  363 F.3d 229 (3d Cir. 2004) ................................................... 18, 25, 27, 33

*Arista Records, LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010) ..............................................................................25

*Athill v. Speziale*,
  No. 06-4941, 2009 WL 1874194 (D.N.J. June 30, 2009) ...................................18

*Blakeslee v. Clinton Cnty.*,
  336 Fed. Appx. 248 (3d Cir. 2009)......................................................................22

*BMG Rights Mgmt. (US) LLC v. Cox Commc'n., Inc.*,
  881 F.3d 293 (4th Cir. 2018) ...........................................................................3, 30

*Call of the Wild Movie, LLC v. Does 1-1,062*,
  770 F. Supp. 2d 332 (D.D.C. 2011)....................................................................30

*Cataldo v. Moses*,
  361 F. Supp. 2d 420 (D.N.J. 2004).......................................................................1

*Cobbler Nevada LLC v. Gonzalez*,
  901 F.3d 1142 (9th Cir. 2018) .......................................................................5, 13

*Connelly v. Lane Const. Corp.*,
  809 F.3d 780 (3d Cir. 2016) ..............................................................................21

*CSC Holdings, Inc. v. Redisi*,
  309 F.3d 988 (7th Cir. 2002) ..............................................................................32

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991).............................................................................................21

*Ford Motor Co. v. Summit Motor Prods., Inc.*,
  930 F.2d 277 (3d Cir. 1991) ..............................................................................23

*Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*,
  139 S. Ct. 881 (2019)..........................................................................................22

*Glacier Films (USA), Inc. v. Turchin*,
  896 F.3d 1033 (9th Cir. 2018) ................................................................ 4, 5, 12

*In re Fine Paper Antitrust Litig.*,
  685 F.2d 810 (3d Cir. 1982) ..............................................................................19

*In re McGraw-Hill Ed. Holdings, LLC*,
  909 F.3d 48 (3d Cir. 2018) ..............................................................................21

*John Wiley & Sons, Inc. v. Doe Nos. 1-30*,
  284 F.R.D. 185 (S.D.N.Y. 2012) ................................................................. 26, 30
*Joseph v. Hess Oil Virgin Islands Corp.*,
  651 F.3d 348 (3d Cir. 2011) ...............................................................................19
*Kansas v. Glover*,
  140 S. Ct. 1183 (2020)..................................................................................4, 24
*Kay Berry, Inc. v. Taylor Gifts, Inc.*,
  421 F.3d 199 (3d Cir. 2005) ...............................................................................23
*LHF Prods., Inc. v. Kabala*,
  No. 16-2028, 2019 WL 4855139 (D. Nev. Sept. 30, 2019) .................................15
*Malibu Media, LLC v. Doe*,
  No. 12-07789, 2014 WL 229295 (D.N.J. Jan. 21, 2014) ....................................29
*Malibu Media, LLC v. Doe*,
  No. 13-365, 2014 WL 7188822 (D. Md. Dec. 16, 2014) ......................................5
*Malibu Media, LLC v. Doe*,
  No. 16-1739, 2017 WL 1050573 (D.N.J. Mar. 20, 2017) ............................. 15, 24
*Malibu Media, LLC v. Doe*,
  No. 18-2555, ECF No. 6 (D.D.C. Dec. 21, 2018) .................................................9
*Malibu Media, LLC v. Doe*,
  No. 18-450, 2018 WL 6446404 (N.D. Ill. Dec. 10, 2018) ...................................16
*Malibu Media, LLC v. Doe*,
  No. 18-450, 2019 WL 8301066 (N.D. Ill. June 5, 2019) .............................. 15, 17
*Malibu Media, LLC v. Doe*,
  No. 18-5792, 2019 WL 7876473 (N.D. Ill. Jan. 2, 2019) ...................................15
*Malibu Media, LLC v. Doe*,
  No. 18-766, 2018 WL 2386068 (D. Conn. May 25, 2018) ..................................26
*Malibu Media, LLC v. Doe*,
  No. 19-2347, 2019 WL 4305486 (D.D.C. Sept. 11, 2019) ..............................9, 18
*Malibu Media, LLC v. John Does 1-15*,
  No. 12-2077, 2012 WL 3089383 (E.D. Pa. July 30, 2012) .................................28
*Malibu Media, LLC v. Palella*,
  No. 18-3041, 2019 WL 1584556 (N.D. Ill. Apr. 12, 2019) .................................16
*Malibu Media, LLC v. Park*,
  No. 17-12107, 2019 WL 2960146 (D.N.J. July 9, 2019) ....................................17
*Malibu Media, LLC v. Rahuse*,
  No. 14-6976, 2015 WL 2231853 (D.N.J. May 11, 2015) ............................. 16, 29
*Mathews v. Eldridge*,
  424 U.S. 319 (1976)..............................................................................................8
*ME2 Prods., Inc. v. Kariuki*,
  No. 17-1077, 2018 WL 2088306 (W.D. Wash. May 4, 2018)..............................23

*Nat'l Amusements, Inc. v. Borough of Palmyra*,
  No. 08-2469, 2010 WL 3199880 (D.N.J. Aug. 12, 2010) ....................................7
*NLRB v. Frazier*,
  966 F.2d 812 (3d Cir. 1992) .....................................................................6
*Patrick Collins, Inc. v. Osburn*,
  No. 12-1294, 2014 WL 1682010 (D. Md. Apr. 28, 2014) ..................................24
*Raw Films, Ltd. v. John Does 1-15*,
  No. 11-7248, 2012 WL 1019067 (E.D. Pa. Mar. 26, 2012) ...............................26
*Royal Indem. Co. v. Petrozzino*,
  598 F.2d 816 (3d Cir. 1979) ....................................................................22
*Singletary v. Penn. Dep't of Corr.*,
  266 F.3d 186 (3d Cir. 2001) ....................................................................22
*Sony BMG Music Entm't v. Tenenbaum*,
  660 F.3d 487 (1st Cir. 2011) ...................................................................12
*Sony Music Entm't Inc. v. Does 1-40*,
  326 F. Supp. 2d 556 (S.D.N.Y. 2004) .......................................................28
*Strike 3 Holdings, LLC v. Doe*,
  330 F.R.D. 552 (D. Minn. 2019) ..............................................................32
*Strike 3 Holdings, LLC v. Doe*,
  351 F. Supp. 3d 160 (D.D.C. 2018) ......................................................8, 19
*Strike 3 Holdings, LLC v. Doe*,
  370 F. Supp. 3d 478 (E.D. Pa. 2019) ..........................................................9
*Strike 3 Holdings, LLC v. Doe*,
  964 F.3d 1203 (D.C. Cir. 2020) ........................................................ *passim*
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-01490, 2019 WL 1529339 (W.D.N.Y. Apr. 8, 2019) ...............................9
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-06938, 2019 WL 402358 (N.D. Cal. Jan. 31, 2019) ..............................15
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12585, 2019 WL 5446239 (D.N.J. Oct. 24, 2019).......................... *passim*
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12585, 2020 WL 3567282 (D.N.J. June 30, 2020) ........................ *passim*
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12605, ECF No. 17 (D.N.J. May 14, 2019) .........................................16
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-12609, ECF No. 16 (D.N.J. June 27, 2019) ........................................33
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-13658, ECF No. 7 (E.D. Mich. Dec. 20, 2018)......................................9
*Strike 3 Holdings, LLC v. Doe*,
  No. 18-14138, ECF No. 15 (D.N.J. June 27, 2019) ........................................32

*Strike 3 Holdings, LLC v. Doe*,
    No. 18-1506, ECF No. 18 (E.D. Va. Feb. 27, 2019) ............................................15
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-16593, 2019 WL 4745360 (D.N.J. Sept. 30, 2019)................. 9, 14, 24, 28
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-1856, ECF No. 5 (D. Nev. Oct. 17, 2018)................................................15
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-2019, 2018 WL 10604533 (N.D. Cal. Sept. 14, 2018)............................15
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-2211, 2019 WL 1778054 (D.D.C. Apr. 23, 2019) ....................................9
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-2637, 2019 WL 935390 (E.D. Cal. Feb. 26, 2019) ...................... 9, 12, 15
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-2648, 2019 WL 78987 (S.D.N.Y. Jan. 2, 2019)............................... 30, 33
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-2720, 2018 WL 6649504 (S.D. Cal. Dec. 18, 2018) ................................15
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-4993, 2019 WL 468816 (N.D. Cal. Feb. 6, 2019)....................................15
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-569, 2018 WL 4109394 (W.D.N.Y. Aug. 28, 2018)................................30
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-7486, ECF No. 15 (N.D. Ill. Dec. 13, 2018) ............................................9
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-7603, ECF No. 15 (N.D. Ill. Dec. 13, 2018) ............................................9
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-7696, ECF No. 16 (N.D. Ill. Dec. 13, 2018) ............................................9
*Strike 3 Holdings, LLC v. Doe*,
    No. 18-7696, ECF No. 16 (N.D. Ill. Dec. 13, 2018) ............................................9
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-08231, 2020 WL 1942471 (N.D. Cal. Apr. 22, 2020) ............................15
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-08239, 2020 WL 1865379 (N.D. Cal. Apr. 13, 2020) ............................15
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-10674, 2020 WL 2574940 (C.D. Cal. Apr. 28, 2020)..............................15
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-10677, 2020 WL 2616243 (C.D. Cal. Apr. 23, 2020)..............................15
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-1152, 2019 WL 3859514 (D. Conn. Aug. 16, 2019).................................9
*Strike 3 Holdings, LLC v. Doe*,
    No. 19-160, 2019 WL 591459 (N.D. Cal. Feb. 13, 2019)....................................15

*Strike 3 Holdings, LLC v. Doe*,
No. 19-16182, 2019 WL 3985628 (D.N.J. Aug. 23, 2019)..................................21
*Strike 3 Holdings, LLC v. Doe*,
No. 19-167, 2019 WL 1865919 (N.D. Cal. Apr. 25, 2019) ............................4, 15
*Strike 3 Holdings, LLC v. Doe*,
No. 19-22743, ECF No. 13  (S.D. Fla. Sept. 20, 2019)........................................4
*Strike 3 Holdings, LLC v. Doe*,
No. 19-232, 2019 WL 591460 (N.D. Cal. Feb. 13, 2019)...................................15
*Strike 3 Holdings, LLC v. Doe*,
No. 19-2452, 2020 WL 2467067 (S.D. Cal. May 13, 2020) ...............................15
*Strike 3 Holdings, LLC v. Doe*,
No. 19-2552, 2019 WL 4855039 (S.D.N.Y. Oct. 2, 2019) ............................4, 28
*Strike 3 Holdings, LLC v. Doe*,
No. 19-396, 2020 WL 917090 (D. Md. Feb. 25, 2020)......................................24
*Strike 3 Holdings, LLC v. Doe*,
No. 19-5818, 2019 WL 5459693 (S.D.N.Y. Oct. 9, 2019) ..................................9
*Strike 3 Holdings, LLC v. Doe*,
No. 19-5866, 2019 WL 4493342 (S.D.N.Y. Aug. 21, 2019) ...............................9
*Strike 3 Holdings, LLC v. Doe*,
No. 19-723, 2019 WL 2996428 (N.D. Cal. July 9, 2019) ..............................9, 15
*Strike 3 Holdings, LLC v. Doe*,
No. 19-73, 2019 WL 777416 (S.D. Cal. Feb. 21, 2019) ....................................15
*Taberer v. Armstrong World Indus., Inc.*,
954 F.2d 888 (3d Cir. 1992) ................................................................................7
*Toys "R" Us, Inc. v. Step Two, S.A.*,
318 F.3d 446 (3d Cir. 2003) ..............................................................................18
*U.S. v. Christie*,
624 F.3d 558 (3d Cir. 2010) ..............................................................................31
*U.S. v. Taylor*,
487 U.S. 326 (1988)...........................................................................................20
*W. Coast Prods., Inc. v. Does 1-1,434*,
No. 11-55, 2012 WL 10132002 (D.D.C. Aug. 6, 2012)....................................28

**Statutes**
17 U.S.C. § 106 ................................................................................. 22, 23
17 U.S.C. § 410.......................................................................................22
17 U.S.C. § 503 ........................................................................................3
17 U.S.C. § 504 ........................................................................................3
17 U.S.C. § 505 ........................................................................................3
28 U.S.C. § 636 ........................................................................................6

47 U.S.C. § 551 ........................................................................... 4, 5, 31, 32

**Rules**

Fed. R. Civ. P. 6 ...........................................................................6
Fed. R. Civ. P. 12 .........................................................................11
Fed. R. Civ. P. 55 .........................................................................11
Fed. R. Civ. P. 72 ...........................................................................6
L. Civ. R. 72.1 ...........................................................................1, 6

**Other Authorities**

David Blackburn, Jeffrey A Eisenach & David Harrison, *Impacts of Digital Video
Piracy on the U.S. Economy* (June 2019) ............................................2
*In re: Holiday and Recess Periods For the Court – Calendar Year 2020 Order*
(D.N.J. July 10, 2019) ................................................................6
S. Rep. No. 105-190 .......................................................................3

## PRELIMINARY STATEMENT

Plaintiff Strike 3 Holdings, LLC ("Plaintiff" or "Strike 3"), by and through its counsel, The Atkin Firm, LLC, respectfully submits this Memorandum of Law in support of its Appeal of the Magistrate Judge's Text Order denying Plaintiff's letter-request for leave to file a motion to serve a third-party subpoena prior to the Rule 26(f) conference subject to a protective order. This Court's review of the Magistrate Judge's Text Order is *de novo* because it substantively foreclosed Plaintiff's claim. As such, this Court owes no deference to the Magistrate Judge's decision, which deprived Plaintiff of its Due Process right be heard by relying upon two cases—one that has been reversed, and one that is clearly distinguishable—to prevent Plaintiff from even *filing* its discovery motion in the first place. This Court should reject the Magistrate Judge's incorrect reasoning and reverse this unjust decision, which essentially turns Plaintiff away at the courthouse door.

## BRIEF FACTUAL & PROCEDURAL BACKGROUND[1]

Plaintiff is part of a creative enterprise that creates the intellectual property associated with the *Blacked*, *Blacked Raw*, *Tushy*, and *Vixen* adult brands (the

---

[1] The Magistrate Judge's Text Order prevented Plaintiff from even *filing* its brief and certifications to create a record in this matter. Nevertheless, the foregoing discussion is based on the certifications, attached to the Certification of John C. Atkin, Esq., that Plaintiff would have filed had the Magistrate Judge afforded Plaintiff its Due Process right to be heard. *See* L. Civ. R. 72.1(c)(2); *Cataldo v. Moses*, 361 F. Supp. 2d 420, 426 (D.N.J. 2004).

"Brands"), and owns the copyrights to each of the motion pictures distributed through the Brands' sites and the trademarks to each of the Brand's names and logos. *See* Declaration of David Williamson, ¶ 13, attached hereto as Exhibit A [hereinafter "Williamson Decl."].  Although it started out small, the Brands' websites now host approximately 15 million visitors each month.  *Id.* at ¶ 14.  This success is no fluke. Plaintiff's philosophy has always been to pay artists and models an amount above that being paid by other companies, focusing on delivering superior quality films. *Id.* at ¶¶ 15–17.  Plaintiff's motion pictures are known for having some of the highest production budgets of any in the adult industry.  *Id.* at ¶ 19.

Unfortunately, this success also brings piracy, which causes tremendous damage.[2]  *Id.* at ¶ 26.  To continue providing value for its subscribers, exciting and inspiring projects for performers, and top-paying jobs and growth in the adult entertainment community, Plaintiff must protect its copyrights.  *Id.* at ¶¶ 18, 39. Although Plaintiff has attempted to curb mass infringement of its copyrighted works by sending thousands of "take-down" notices under the Digital Millennium

---

[2] The Global Innovation Policy Center, under the sponsorship of the U.S. Chamber of Commerce, released a report in June 2019 finding that digital video piracy conservatively causes lost domestic revenues of at least $29.2 billion and as much as $71.0 billion.  It also found that it results in losses to the U.S. economy of between 230,000 and 560,000 jobs and between $47.5 billion and $115.3 billion in reduced gross domestic product (GDP) each year.  David Blackburn, Jeffrey A Eisenach & David Harrison, *Impacts of Digital Video Piracy on the U.S. Economy* (June 2019), *available at* https://www.theglobalipcenter.com/wp-content/uploads/2019/06/Digital-Video-Piracy.pdf.

Copyright Act ("DMCA"),[3] individual suits like this one against extreme infringers are also necessary to (1) generally deter mass piracy of its motion pictures and redirect infringers into the readily accessible and legal market for its works, and (2) specifically deter (and enjoin) Doe from continuing to infringe on Plaintiff's works, to destroy the infringing copies of the works that Doe has and is distributing using BitTorrent, and to obtain compensation for the infringement that has occurred.  *See* 17 U.S.C. §§ 503(b); 504(a), (c); 505.  These remedies are available solely through the Copyright Act, and not the DMCA.

To combat the mass infringement of its copyrighted works, Plaintiff has developed proprietary software, VXN Scan ("VXN"), which has detected and recorded forensic evidence of the infringement of Plaintiff's copyrighted works at

---

[3] DMCA notices of infringement, which are sent to Internet Service Providers ("ISPs") in the (usually futile) hope that they will be forwarded to the infringers themselves, *cf. BMG Rights Mgmt. (US) LLC v. Cox Commc'n., Inc.*, 881 F.3d 293, 300, 304 (4th Cir. 2018), are different from the thousands of DMCA take-down notices that Plaintiff sends to websites that are hosting infringing content, enabling infringement by individuals.  *See* Williamson Decl., at ¶ 31.  Although Plaintiff formerly sent DMCA notices of infringement to ISPs with the hope that they would be forwarded to individual infringers—to remind them that stealing is wrong—there is no "exhaustion requirement" that rightsholders first send such notices prior to filing suit against individual infringers to protect their copyrights.  *See* S. Rep. No. 105-190 at 45 ("[C]opyright owners are not obligated to give notification of claimed infringement in order to enforce their rights."); *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2020 WL 3567282, at *9 (D.N.J. June 30, 2020) (holding that utilization of DMCA notice procedure is "not relevant" to motion for expedited discovery).

issue in this matter. Specifically, that Defendant John Doe subscriber assigned IP address 173.63.166.25 ("Doe") was illegally distributing 51 of Plaintiff's motion pictures over a substantial period of time.[4] *See* Williamson Decl. at ¶¶ 40–80; Declaration of Patrick Paige, attached hereto as Exhibit B [hereinafter "Paige Decl."], at ¶¶ 13–28; ECF Nos. 1, 1-1.

Although these BitTorrent infringement suits "fit[] squarely within the tradition of copyright enforcement," *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018), the anonymity afforded by the BitTorrent protocol (revealing only the user's IP address), along with the qualified privacy interest for subscriber data created by the *Cable Communications Policy Act of 1984* ("CCPA"), 47 U.S.C. § 551 *et seq.*, presents a unique technological obstacle. The only lawful way Plaintiff (and other copyright holders) have of directly combating this mass infringement is to discover the name of the person assigned the IP address being

---

[4] Although it is possible that other individuals exist who also had sufficient access to Doe's IP address during the substantial period of alleged infringement, and, therefore, *could* be the infringer, *see infra* Sec. III.A, courts have agreed that the existence of these additional individuals is purely speculative, and, more importantly, irrelevant at this juncture. *See Strike 3 Holdings, LLC v. Doe*, No. 19-2552, 2019 WL 4855039, at *2 (S.D.N.Y. Oct. 2, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-22743, ECF No. 13 at 6–8 (S.D. Fla. Sept. 20, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-167, 2019 WL 1865919, at *2 (N.D. Cal. Apr. 25, 2019). At this stage, the only person that can be shown to definitively (1) exist and (2) have sufficient access to the IP address during the period of infringement is the subscriber. *See Kansas v. Glover*, __ U.S. __, 140 S. Ct. 1183, 1186–91 (2020) (recognizing reasonable inference that owner is also driver of vehicle in absence of negating information).

used to commit the infringement, *id.* at 1036, and then determine whether it can further identify that person (or someone else) as the infringer. *Cobbler Nevada LLC v. Gonzalez*, 901 F.3d 1142, 1147 (9th Cir. 2018). And rightsholders can only do that by obtaining court authorization to serve a subpoena on the ISP to identify the subscriber, 47 U.S.C. § 551, *et seq.*, which first requires that suit be filed naming the subscriber as the defendant. *See Malibu Media, LLC v. Doe*, No. 13-365, 2014 WL 7188822, *6–9 (D. Md. Dec. 16, 2014) (Grimm, J.). As a result, courts across the country have adopted "sensible" and "practical" procedures to permit limited "early discovery" of a subscriber's identity so that these suits may either advance or be promptly dismissed. *Glacier Films*, 896 F.3d at 1036, 1038, 1040. Without leave to conduct early discovery to obtain Doe's identity, Plaintiff cannot investigate Doe's role in the infringement, further identify the infringer, or serve that person with process. In short, Plaintiff cannot protect its copyrights.

Plaintiff filed this suit on August 8, 2020, ECF No. 1, and filed a letter on August 18, 2020, pursuant to the Magistrate Judge's Civil Case Management Order, requesting leave to file a discovery motion to obtain the Court's permission to serve limited early discovery on Doe's ISP, Verizon Fios, in the form of a Rule 45 subpoena seeking only the name and address of the subscriber assigned this IP address at the exact date and time of one (1) instance of recorded infringement, subject to the terms of a protective order. ECF No. 3, *see also* Exhibit E. Six days

later, the Magistrate Judge summarily denied Plaintiff's letter request to file a discovery motion in a Text Order, stating:

> In conformance with Judge Haydens Opinion in Malibu Media v. Peled, 2:18-cv-00141-KSH-CLW, and Judge Schneiders Opinion in Strike 3 Holdings, LLC v. Doe, 1:18-cv-12585-NLH-JS, 2019 WL 5446239, Plaintiffs letter request for leave to file a discovery motion (DE 3) is denied.. So Ordered by Magistrate Judge Cathy L. Waldor on 8/24/20.

ECF No. 4.   Because Judge Hayden's opinion in *Peled* is procedurally distinguishable on its face and Judge Schneider's opinion in *Strike 3 Holdings, LLC v. Doe* was recently reversed by Judge Hillman in a well-reasoned and thorough decision, and because the Text Order substantively forecloses Plaintiff's claim without even the opportunity to be heard, Plaintiff has filed this timely appeal.  *See* Fed. R. Civ. P. 6(a)(1); L. Civ. R. 72.1(c); *In re: Holiday and Recess Periods For the Court – Calendar Year 2020 Order* (D.N.J. July 10, 2019).

## LEGAL ARGUMENT

### I.   STANDARD OF REVIEW

Although the Text Order addressed a letter request to file a discovery motion, the Magistrate Judge's denial of that request had a dispositive effect on Plaintiff's claim and, therefore, must be reviewed *de novo*.  *NLRB. v. Frazier*, 966 F.2d 812, 817–18 (3d Cir. 1992); *see* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).  Indeed, in reversing Judge Schneider's decision, Judge Hillman expressly recognized that *de novo* review was the appropriate standard—in this exact context—because the denial

of a motion to conduct early discovery here "leaves Plaintiff without a means for discovering the identity of the placeholder Defendants, essentially preventing it from proceeding with these actions" and, therefore, is "dispositive in practical effect." *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2020 WL 3567282, at *3 (D.N.J. June 30, 2020) (Hillman, J.) [hereinafter "*Judge Hillman's Opinion*"], *rev'g*, No. 18-12585, 2019 WL 5446239 (D.N.J. Oct. 24, 2019) (Schneider, J.) [hereinafter "*Judge Schneider's Opinion*"].  "A *de novo* determination means an independent determination of a controversy that accords no deference to any prior resolution of the same controversy." *Nat'l Amusements, Inc. v. Borough of Palmyra*, No. 08-2469, 2010 WL 3199880, *1 (D.N.J. Aug. 12, 2010) (citations and quotation marks omitted); *see also Taberer v. Armstrong World Indus., Inc.*, 954 F.2d 888, 904 (3d Cir. 1992).

## II. THE DECISIONS RELIED UPON BY THE MAGISTRATE JUDGE DO NOT SUPPORT THE DENIAL OF LEAVE TO FILE A MOTION TO CONDUCT EARLY DISCOVERY

### A. *Judge Schneider's Opinion* Was Reversed.

The Magistrate Judge cited Judge Schneider's decision in *Strike 3 Holdings, LLC v. Doe*, No. 18-12585, 2019 WL 5446239 (D.N.J. Oct. 24, 2019) as a basis to deny Plaintiff leave to even file its discovery motion.  Not only was this a denial of

Plaintiff's Due Process right to be heard,[5] but the Text Order failed to acknowledge the important subsequent history of *Judge Schneider's Opinion* that completely undermines the Court's reliance on it, namely, that it was recently ***reversed*** on appeal. *See Judge Hillman's Opinion*, 2020 WL 3567282 at *4–11.

By way of background, after granting Plaintiff's requests to conduct early discovery in several matters, Judge Schneider issued an Order to Show Cause asking why he should not adopt and follow the reasoning of a not-yet-reversed decision issued by the U.S. District Court for the District of Columbia, which denied Strike 3 leave to conduct early discovery in a similar matter. *Strike 3 Holdings, LLC v. Doe*, 351 F. Supp. 3d 160 (D.D.C. 2018) (Lamberth, J.) [hereinafter "*D.C. Opinion*"], *rev'd*, 964 F.3d 1203 (D.C. Cir. 2020).   Following Plaintiff's response and submission of an expert report, Judge Schneider held two evidentiary hearings and ultimately denied Plaintiff leave to conduct early discovery in a decision that was rife with legal and factual errors. *See generally Strike 3 Holdings, LLC v. Doe*, No. 18-12585, ECF No. 31-1 (appeal brief setting forth legal and factual errors).

After the issuance of *Judge Schneider's Opinion*, the *D.C. Opinion* was reversed by the U.S. Court of Appeals for the District of Columbia Circuit because it improperly discriminated based on the content of Plaintiff's works, misapplied

---

[5] "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

pleading standards, and "drew unsupported, negative inferences against Strike 3 regarding its litigation tactics and motivation in seeking early discovery." *Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1208 (D.C. Cir. 2020) [hereinafter "*D.C. Circuit Opinion*"].[6]  Plaintiff similarly appealed *Judge Schneider's Opinion*, which was reversed by Judge Hillman (shortly before the *D.C. Circuit Opinion* was issued) because it misapplied pleading standards, misinterpreted the DMCA, and misapprehended the importance of Federal Rule of Civil Procedure 1, which resulted in a decision that was "not just." *See Judge Hillman's Opinion*, 2020 WL 3567282 at *4–11.

---

[6] Even before the *D.C. Opinion* was reversed by the *D.C. Circuit Opinion* as being "an abuse of discretion under any applicable standard," 964 F.3d at 1207 n.2, courts across the country—including in this District—had declined to follow it, describing it as "heavily criticized and rarely followed." *Strike 3 Holdings, LLC v. Doe*, No. 19-723, 2019 WL 2996428, at *2 (N.D. Cal. July 9, 2019). *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 19-5818, 2019 WL 5459693, at *2 (S.D.N.Y. Oct. 9, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-16593, 2019 WL 4745360, at *3–4 (D.N.J. Sept. 30, 2019) (Bongiovanni, J.); *Malibu Media, LLC v. Doe*, No. 19-2347, 2019 WL 4305486, at *2 n.2 (D.D.C. Sept. 11, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-5866, 2019 WL 4493342, at *2 n.1 (S.D.N.Y. Aug. 21, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-1152, 2019 WL 3859514, at *2 (D. Conn. Aug. 16, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-2211, 2019 WL 1778054, at *2 n.2 (D.D.C. Apr. 23, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-01490, 2019 WL 1529339, at *3–4 (W.D.N.Y. Apr. 8, 2019); *Strike 3 Holdings, LLC v. Doe*, 370 F. Supp. 3d 478, 481 (E.D. Pa. 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-2637, 2019 WL 935390, at *5 (E.D. Cal. Feb. 26, 2019); *Malibu Media, LLC v. Doe*, No. 18-2555, ECF No. 6 (D.D.C. Dec. 21, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-13658, ECF Nos. 5, 7 (E.D. Mich. Dec. 20, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-7696, ECF Nos. 13, 16 (N.D. Ill. Dec. 13, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-7486, ECF Nos. 12, 15 (N.D. Ill. Dec. 13, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-7603, ECF Nos. 12, 15 (N.D. Ill. Dec. 13, 2018).

*Judge Schneider's Opinion* provides no basis to deny Plaintiff leave to file a motion to conduct early discovery.  To the contrary, Judge Hillman's reversal of *Judge Schneider's Opinion* demonstrates that it was error for the Magistrate Judge to rely upon that decision to deny Plaintiff the right to even be heard on its application.  Indeed, as discussed in Section III, *infra*, there is clearly "good cause" to permit Plaintiff to conduct limited early discovery subject to a protective order.

### B.    *Peled* Did Not Concern Early Discovery.

The Magistrate Judge's Text Order also stated that the Court's basis for denying Strike 3's Due Process right to even be heard on its motion for early discovery was the decision of *Malibu Media, LLC v. Peled*, No. 18-141, 2020 WL 831072 (D.N.J. Feb. 20, 2020) (Hayden, J.).  However, *Peled* concerned what a plaintiff must allege *after* early discovery occurs to justify the entry of default judgment.  *Peled* provides no support for the Magistrate Judge's decision to deny leave to even file a motion for early discovery.

As a preliminary matter, it is important to note that the plaintiff in *Peled* was granted leave—by the same Magistrate Judge—to conduct early discovery to learn the subscriber's identity in that matter.  In granting that request for early discovery, the Magistrate Judge specifically noted "the Court recognizes that the subscriber whose information is on file with the ISP may not be personally responsible for the alleged infringement," and that "Plaintiff will have to go beyond the 'limited

discovery' that it contends will reveal Defendant's identity" to "determine whether that particular subscriber illegally distributed the copyrighted work." No. 18-141, ECF No. 5 at p.3. However, after receiving that early discovery, the plaintiff in *Peled* failed to allege any additional information to further identify the infringer, beyond the defendant merely being the IP address subscriber, in its amended complaint. *See* No. 18-141, ECF No. 12 (Am. Compl.). As a result, the Court denied the plaintiff's motion for default judgment based on that amended pleading, finding that the plaintiff had not "made a sufficient showing to conclude that [defendant] in fact infringed its copyright[.]" *Peled*, 2020 WL 831072 at *6.

In so holding, the Court found the reasoning of five (5) cases to be persuasive. As discussed in more detail above, two of those matters—*Judge Schneider's Opinion* and the *D.C. Opinion*—were later reversed on appeal. Importantly, those two decisions were also the *only* matters considered in *Peled* that dealt with early discovery. The remaining three decisions concerned pleading standards *after* early discovery was allowed, either in the context of Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 55. For this reason alone, those decisions are instructive in explaining exactly why the decision in *Peled* should not be read out of its context—a motion for default judgment—to close the door on early discovery.

First, the Ninth Circuit's decision in *Cobbler*, which is one of two book-end decisions authored by the Hon. M. Margaret McKeown of the Ninth Circuit

concerning BitTorrent copyright infringement litigation, is particularly important. The other decision, which must be read in tandem with *Cobbler*, was issued a few weeks prior in *Glacier Films*. *See Strike 3*, 2019 WL 935390 at *4 ("*Cobbler*[] did not disturb the Ninth Circuit's decision in *Glacier Films*[.]").

In *Glacier Films*, the Ninth Circuit recognized that BitTorrent copyright infringement suits "fit[] squarely within the tradition of copyright enforcement," and that "'Congress [has] specifically acknowledged that consumer-based, noncommercial use of copyrighted materials constituted actionable copyright infringement' and 'contemplate[d] that suits like this were within the Act,'" *Glacier Films*, 896 F.3d at 1040 (quoting *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 500 (1st Cir. 2011), *cert. denied*, 566 U.S. 1017 (2012)).  The Court further recognized that permitting early discovery in these suits, *i.e.*, "allow[ing] copyright holders to seek limited discovery from an Internet Service Provider to establish a potential infringer's identity[,]" was more than warranted:  it was "practical" and "sensible." *Id.* at 1036, 1038, 1040 (citations and internal quotation marks omitted).

Several weeks later, the Ninth Circuit issued *Cobbler*, in which the Court again acknowledged that early discovery is "part of the puzzle" a plaintiff must solve to further identify the "true" infringer in BitTorrent infringement cases.  901 F.3d at 1145.  However, *after* early discovery occurs, the Ninth Circuit held that it is incumbent on a plaintiff to further identify the infringer based on "something more"

than merely being the subscriber (or having sufficient access to the IP address).  *Id.* Thus, under the facts of *Cobbler*, the Ninth Circuit found the plaintiff's amended complaint deficient where the plaintiff's "counsel learned that the internet service was accessible to both residents and visitors at an adult care home, [and counsel expressly] concluded that 'it does not appear that [the subscriber] is a regular occupant of the residence or the likely infringer.'"  *Id.*  As the Court observed: "[a]lthough the district court granted leave to depose [the subscriber], the deposition revealed no new information regarding the identity of the actual infringer. Nevertheless, [the plaintiff] filed a First Amended Complaint and named [the subscriber] as the sole Doe."  *Id.*  That is, after early discovery occurred, including the taking of the defendant's deposition, the plaintiff essentially conceded that it did not know who the infringer was, but nevertheless proceeded with direct and indirect claims against the subscriber based solely on his status as the subscriber.

As the D.C. Court of Appeals recently recognized, reliance on *Cobbler* to deny early discovery in BitTorrent infringement matters is "misplaced":

> In *Cobbler Nevada*, a copyright holder's complaint against an IP address subscriber was dismissed under Rule 12(b)(6)—but only after the plaintiff was permitted to subpoena the defendant's ISP.  Indeed, the district court in *Cobbler Nevada* granted the plaintiff leave not only to issue its subpoena, but to depose the subscriber once he was identified.  This preliminary discovery revealed that the IP address was registered to an individual who operated an adult foster care home where numerous residents and visitors had access to the same Internet service and IP address.  After these facts came to light and the plaintiff failed to plead any additional facts linking the defendant to the alleged

13

infringement, the case was dismissed. Under those circumstances, the Ninth Circuit found, the defendant's "status as the registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer."

Here, by contrast, Strike 3 has not even been able to gather such threshold facts about the alleged infringer. To be sure, the requested discovery may ultimately cast doubt on Strike 3's claim against the IP address subscriber. For example, the subpoenaed records could reveal that the IP address is associated with a coffee shop, a public library, or, as in *Cobbler Nevada*, a residential facility where numerous users access the same Internet service. At that point, if Strike 3 is unable to plead additional facts tying the registered subscriber to the alleged infringement, the scales may tilt towards implausibility. At this stage, however, we cannot know what Strike 3's subpoena will uncover. The mere fact that discovery *may* demonstrate that the subscriber is not the proper defendant is no basis to close the courthouse doors before Strike 3 can step inside.

*D.C. Circuit Opinion*, 964 F.3d at 1211–12 (citations and footnote omitted).

The D.C. Circuit is not alone in this interpretation of *Cobbler*. Rather, with only one exception, courts across our country—including in this District— have all come to the correct and just conclusion that *Cobbler* provides no support to deny early discovery. *See Strike 3*, 2019 WL 4745360 at *6 (Bongiovanni, J.) (denying motion to quash ISP subpoena because, among other reasons, "[e]ven in *Cobbler* itself, the Plaintiff was allowed to subpoena the ISP" and "*Cobbler* does not suggest

that the sort of information sought here should not be discoverable.").[7]  That one

exception, of course, is the now-reversed *Judge Schneider's Opinion*.

Nor is any of this a novel development in this District.  Rather, even prior to

*Glacier Films* and *Cobbler* it was well-settled that it is plausible to allege the

subscriber is the infringer *before* early discovery occurs, *Malibu Media, LLC v. Doe*,

No. 16-1739, 2017 WL 1050573, at *2 (D.N.J. Mar. 20, 2017) (Martini, J.), and that

---

[7] *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 19-2452, 2020 WL 2467067, at *3 (S.D. Cal. May 13, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-10674, 2020 WL 2574940, at *2 (C.D. Cal. Apr. 28, 2020), *report and rec. adopted*, 2020 WL 2572456 (C.D. Cal. May 21, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-10677, 2020 WL 2616243, at *3 (C.D. Cal. Apr. 23, 2020), *report and rec. adopted*, 2020 WL 2615450 (C.D. Cal. May 22, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-08231, 2020 WL 1942471, at *2 (N.D. Cal. Apr. 22, 2020); *Strike 3 Holdings, LLC v. Doe*, No. 19-08239, 2020 WL 1865379, at *3 (N.D. Cal. Apr. 13, 2020); *LHF Prods., Inc. v. Kabala*, No. 16-2028, 2019 WL 4855139, at *4–5 (D. Nev. Sept. 30, 2019); *Strike 3*, 2019 WL 2996428 at *3 ("*Cobbler Nevada* does not stand for the proposition that subpoenas may not be used to determine a subscriber's name."); *Malibu Media, LLC v. Doe*, No. 18-450, 2019 WL 8301066, at *1–2 (N.D. Ill. June 5, 2019); *Strike 3*, 2019 WL 1865919 at *2; *Strike 3 Holdings, LLC v. Doe*, No. 18-1506, ECF No. 18 (E.D. Va. Feb. 27, 2019); *Strike 3*, 2019 WL 935390 at *4–5; *Strike 3 Holdings, LLC v. Doe*, No. 19-73, 2019 WL 777416, at *3 (S.D. Cal. Feb. 21, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-232, 2019 WL 591460, at *2 n. 1 (N.D. Cal. Feb. 13, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 19-160, 2019 WL 591459, at *2 n.1 (N.D. Cal. Feb. 13, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-4993, 2019 WL 468816, at *2 (N.D. Cal. Feb. 6, 2019); *Strike 3 Holdings, LLC v. Doe*, No. 18-06938, 2019 WL 402358, at *3 n.1 (N.D. Cal. Jan. 31, 2019); *Malibu Media, LLC v. Doe*, No. 18-5792, 2019 WL 7876473, at *3 (N.D. Ill. Jan. 2, 2019); *Strike 3*, 2019 WL 78987 at *3; *Strike 3 Holdings, LLC v. Doe*, No. 18-2720, 2018 WL 6649504, at *3 (S.D. Cal. Dec. 18, 2018); *Strike 3 Holdings, LLC v. Doe*, No. 18-1856, ECF No. 5 at *2 (D. Nev. Oct. 17, 2018) ("Interpreting *Cobbler* to require plaintiffs to identify defendants without allowing plaintiffs the tools to do so would not serve the interests of justice."); *Strike 3 Holdings, LLC v. Doe*, No. 18-2019, 2018 WL 10604533, at *3 (N.D. Cal. Sept. 14, 2018).

*after* early discovery occurs, a plaintiff can continue to state a claim by amending its complaint to allege publicly available connections, such as social media evidence, to further identify the defendant as the infringer. *Malibu Media, LLC v. Rahuse*, No. 14-6976, 2015 WL 2231853, at *4 (D.N.J. May 11, 2015) (Linares, J.). Indeed, Strike 3 has obtained default judgment in this District precisely because its amended complaints further identify the infringer beyond merely being the subscriber (or someone with sufficient access to the IP address). *See Strike 3 Holdings, LLC v. Doe,* No. 18-12605, ECF No. 17 (D.N.J. May 14, 2019) (Martinotti, J.).

Second, *Peled* also relied on a decision from the Hon. Sara L. Ellis, U.S.D.J., of the Northern District of Illinois, which granted a motion to dismiss an amended complaint—filed *after* early discovery was permitted—for failing to meet *Cobbler*'s "something more" standard where that pleading merely alleged that the subscriber lived alone. *Malibu Media, LLC v. Doe,* No. 18-450, 2018 WL 6446404, *3 (N.D. Ill. Dec. 10, 2018). *But see Malibu Media, LLC v. Palella*, No. 18-3041, 2019 WL 1584556, at *2 (N.D. Ill. Apr. 12, 2019). Importantly, Judge Ellis's 2018 decision only tells half of the story of that litigation. Specifically, after the motion to dismiss was granted in 2018, the plaintiff filed a second amended complaint, which alleged connections to further identify the infringer based on their BitTorrent use and that the infringement ceased as soon as the ISP subpoena—*i.e.*, the early discovery that Judge Ellis permitted, *see* No. 18-450, ECF No. 12—was served on the defendant.

*Malibu Media, LLC v. Doe*, No. 18-450, 2019 WL 8301066, at *2 (N.D. Ill. June 5, 2019). Judge Ellis found that these connections were sufficient to meet *Cobbler* and denied a second motion to dismiss. *Id.* As such, while Judge Ellis's 2018 decision clearly has relevance where a plaintiff is seeking to survive a motion to dismiss or obtain default judgment *after* early discovery occurs, it provides no basis to deny early discovery in the first place.

Finally, *Peled* relied upon a decision by Judge Vazquez, which similarly concerned whether to grant default judgment—and not early discovery—in a BitTorrent copyright infringement matter. *See Malibu Media, LLC v. Park*, No. 17-12107, 2019 WL 2960146 (D.N.J. July 9, 2019). As in *Peled*, Judge Falk's Order granting early discovery in *Park* recognized that "disclosure of the information sought by Plaintiff will not necessarily reveal the infringer's identity; it would only provide information regarding the ISP subscriber. Plaintiff would then have to determine whether that particular subscriber illegally distributed the copyrighted work." No. 17-12107, ECF No. 6, ¶ 6. And as in *Peled*, the amended complaint in *Park*—filed *after* early discovery was permitted—failed to further identify the infringer beyond merely being the subscriber, No. 17-12107, ECF No. 8 (Am. Compl.), which resulted in the denial of default judgment. As other courts have recognized, *Park* provides no support to deny leave to conduct early discovery in

these matters.  *See Malibu Media*, 2019 WL 4305486 at *2 n.2 (distinguishing *Park* when granting early discovery).

In short, *Peled* did not concern whether to grant or deny early discovery, and the decisions it relied upon all either (1) *support* granting early discovery to allow rightsholders to further identify the infringers in these matters, or (2) have been *reversed* specifically because they erred by denying early discovery.

## III.   THERE IS GOOD CAUSE TO GRANT PLAINTIFF EARLY DISCOVERY TO IDENTIFY THE ANONYMOUS DEFENDANT

"In cases involving as-yet-unknown defendants, in which the plaintiff cannot serve its complaint—much less confer with the defendant—without obtaining identifying information from a third party, 'the *only* potential avenue for discovery is a court order under Rule 26(d)(1).'"  *D.C. Circuit Opinion*, 964 F.3d at 1207 (internal brackets and citations omitted) (emphasis added).  The Third Circuit has instructed that where discovery is sought that "would aid in the identification of responsible defendants or the lack thereof, district courts *should strongly consider granting it*."  *Alston v. Parker*, 363 F.3d 229, 233 n.6 (3d Cir. 2004) (emphasis added); *Athill v. Speziale*, No. 06-4941, 2009 WL 1874194, at *14 (D.N.J. June 30, 2009) ("Plaintiffs should thus be allowed every opportunity to identify the unknown defendants."); *see also Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003).  Moreover, "[i]n conducting any discovery inquiry, the Third Circuit has suggested that district courts risk reversal if their rulings will make it impossible for

any party to 'obtain crucial evidence[.]'" *Judge Hillman's Opinion*, 2020 WL 3567282 at *5 (quoting *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982)).

Although "Rule 26(d) does not set a standard for determining when expedited discovery should be permitted," courts in this District routinely apply a "good cause" standard for this determination.[8]  *Id.* at *4.  "Under the good cause test, whether to permit expedited discovery is decided by considering the totality of the circumstances and the balancing of the interests of the plaintiff and defendant."  *Id.* (citation omitted).  "'Good cause' is understood to mean '[a] legally sufficient reason,' and it reflects 'the burden placed on a litigant (usu. by court rule or order) to show why a request should be granted or an action excused.'"  *Joseph v. Hess Oil Virgin Islands Corp.*, 651 F.3d 348, 351 (3d Cir. 2011) (citation omitted).

---

[8] The D.C. Circuit's reversal of the *D.C. Opinion* noted that the "good cause" requirement in Rule 26(b) was eliminated by amendment in 2015, which replaced it "with the overarching relevance and proportionality standard[.]"  *D.C. Circuit Opinion*, 964 F.3d at 1207 n.2.  The D.C. Circuit nevertheless concluded that the *D.C. Opinion* "was an abuse of discretion under any applicable standard," and, therefore, did not reach whether the "good cause" standard "continues to apply under the current version of Rule 26."  *Id.*  Importantly, there is no conflict between the *D.C. Circuit Opinion* and *Judge Hillman's Opinion* because Judge Hillman agreed with Judge Schneider's conclusion that the subscriber's identity is "relevant" within the meaning of Fed. R. Civ. P. 26(b), 2020 WL 3567282 at *7 n.4, and looked to the "good cause" factors to determine whether there was any reason to deny Plaintiff discovery of that relevant information *in an expedited fashion*, and found there was none.  *Id.* at *8.

In his decision reversing Judge Schneider's denial of Plaintiff's request for early discovery, Judge Hillman identified a "non-exclusive list of factors courts typically examine in conducting the good cause analysis" in this context, and found that Plaintiff satisfied each factor and was therefore entitled to early discovery.[9] *See Judge Hillman's Opinion*, 2020 WL 3567282 at *4. Those factors are:

(1) the plaintiff's ability to make out a *prima facie* showing of infringement;

(2) the timing of the request in light of the formal start to discovery;

(3) whether the request is narrowly tailored and the specificity of the discovery request;

(4) the purpose of the requested discovery and the need for the information sought in order to advance the claim;

(5) whether the discovery burdens the defendant and whether the defendant can respond to the request in an expedited manner;

(6) the absence of alternative means for obtaining the information sought in the subpoena; and

(7) the defendant's expectation of privacy.

In sum, "[g]ood cause exists where 'the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the

---

[9] Importantly, while "district courts have broad discretion over the structure, timing, and scope of discovery," that "discretion is not unbounded." *D.C. Circuit Opinion*, 964 F.3d at 1205, 1208. "[D]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment [must] be guided by sound legal principles." *Id.* at 1208 (quoting *U.S. v. Taylor*, 487 U.S. 326, 336 (1988)).

responding party.'"  *Strike 3 Holdings, LLC v. Doe*, No. 19-16182, 2019 WL 3985628, at *1 (D.N.J. Aug. 23, 2019) (citation omitted).

### A.  Plaintiff's Complaint States A *Prima Facie* Claim for Direct Copyright Infringement.

To state a *prima facie* claim for copyright infringement of Plaintiff's motion pictures at issue in this litigation (hereinafter the "Works"), *see* ECF No. 1-1, Plaintiff must allege (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991); *In re McGraw-Hill Ed. Holdings, LLC*, 909 F.3d 48, 66–67 (3d Cir. 2018).  Plaintiff's Complaint accomplishes this, alleging: (1) "Plaintiff is the owner of the Works, which [are] an original work of authorship"; (2) "Plaintiff owns the copyrights to the Works and the Works have been registered with the United States Copyright Office"; (3) "[d]efendant copied and distributed the constituent elements of Plaintiff's Works using the BitTorrent protocol"; and (4) "[a]t no point in time did Plaintiff authorize, permit, or consent to Defendant's distribution of its Works, expressly or otherwise."  *See* ECF No. 1 at ¶¶ 45, 48–50.

These allegations "quite clearly" and "unmistakably" allege the necessary elements of copyright infringement against Doe.  *Judge Hillman's Opinion*, 2020 WL 3567282 at *5–6.  And these allegations are not "conclusory."  Rather, Plaintiff specifically alleges all the necessary "historical fact[s]," *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016), of its claim:  the "who" (the subscriber),

the "what" (copyright infringement of specific works produced by Plaintiff), the "where" (established by geo-location technology), the "when" (recorded down to the minute and second), and the "how" (through the BitTorrent protocol). ECF Nos. 1, 1-1. That Plaintiff cannot—without early discovery—identify Doe by name is irrelevant: "When a plaintiff is aware of an actionable claim but does not know the identity of a defendant, an action may be commenced against John Doe." *Royal Indem. Co. v. Petrozzino*, 598 F.2d 816, 818 (3d Cir. 1979); *see also Blakeslee v. Clinton Cnty.*, 336 Fed. Appx. 248, 250 (3d Cir. 2009); *Singletary v. Penn. Dep't of Corr.*, 266 F.3d 186, 201 n.5 (3d Cir. 2001).

Plaintiff owns a valid copyright in each of the Works. *See* 17 U.S.C. § 410(c); *see also* ECF No. 1 at ¶¶ 45, 48. All of Plaintiff's copyrights were registered with the Copyright Office at the time suit was filed. *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, __ U.S. __, 139 S. Ct. 881, 886–87 (2019); *see* ECF No. 1-1. Moreover, Plaintiff's *prima facie* allegations of infringement are attested to by Plaintiff's investigator, Patrick Paige. *See generally* Paige Decl. And each digital file has been verified to be a copy of one of Plaintiff's copyrighted Works. *See* Declaration of Susan B. Stalzer, Exhibit C.

Plaintiff has also made a plausible *prima facie* showing of "copying" by Doe. "Copying refers to the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, 'including the rights to

distribute and reproduce copyrighted material.'"  *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)); *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).  Plaintiff's Complaint alleges that Doe not only downloaded Plaintiff's Works over the BitTorrent network, *see* 17 U.S.C. § 106(1), but also distributed these files to other users in the BitTorrent swarm.  *See id.* § 106(3); *see also* ECF No. 1 at ¶¶ 4, 28–44, 49.

Plaintiff acknowledges that it is possible that other individuals might (1) exist and (2) have sufficient access to the IP address during the infringement, that is, it is possible Doe might not be the infringer.  *See ME2 Prods., Inc. v. Kariuki,* No. 17-1077, 2018 WL 2088306, at *2 (W.D. Wash. May 4, 2018) ("Plaintiff may be wrong—but it is not required to prove its allegations in order to adequately plead a claim of infringement under *Twombly.*").  However, at this juncture, Plaintiff's initial complaint—filed *before* early discovery has occurred—clearly states a claim of infringement against the anonymous subscriber:

> It is plausible [to allege] that files downloaded using a particular IP address were downloaded by the subscriber of that address.  The possibility that a family member, guest, or neighbor may have downloaded the Works does not render Plaintiff's claims implausible.

*Malibu Media*, 2017 WL 1050573 at *2 (Martini, J.) (denying motion to dismiss) (citation omitted).[10]  Indeed, "it takes no great imagination to see how evidence that a file was downloaded by a certain IP address could support a plausible claim that the file was downloaded by the subscriber at that IP address." *Strike 3 Holdings, LLC v. Doe*, No. 19-396, 2020 WL 917090, at *3 (D. Md. Feb. 25, 2020) (Grimm, J.) (quoting *Patrick Collins, Inc. v. Osburn*, No. 12-1294, 2014 WL 1682010, at *4 (D. Md. Apr. 28, 2014), *aff'd*, 595 Fed. Appx. 243 (4th Cir. 2015)); *see also Glover*, 140 S. Ct. at 1186–91.

"At this stage, the court is not asked to pass judgment on the strength of the plaintiff's allegations against the defendant, but to determine whether the plaintiff should have the opportunity to name that defendant in the first place." *D.C. Circuit Opinion*, 964 F.3d at 1210.  "That is precisely what Strike 3 seeks here: the discovery necessary to reveal the defendant's identity and to begin litigating its infringement claims." *Id.*  Plaintiff has "unmistakably allege[d] that Defendant[] infringed upon

---

[10] *See also D.C. Circuit Opinion*, 964 F.3d at 1211 (noting that it is "undoubtedly true that individuals other than the IP address subscriber may have been responsible for the infringement at issue," but rejecting argument that "this alternative explanation [is] so obvious as to render Strike 3's claim against the subscriber facially implausible"); *Judge Hillman's Opinion*, 2020 WL 3567282 at *5–7 (reversing determination that Plaintiff's complaint failed to state a plausible claim); *Strike 3*, 2019 WL 4745360 at *6 (Bongiovanni, J.) (holding that "[i]f any defendant could quash a subpoena based on the mere possibility that someone else has used the defendant subscriber's IP address to perpetuate the alleged infringement then a plaintiff would be unable to enforce its rights.") (citation and internal quotation marks omitted).

Plaintiff's copyrighted material by downloading copies of protected works. Therefore, Plaintiff states a *prima facie* case for copyright infringement." *Judge Hillman's Opinion*, 2020 WL 3567282 at *5–6. "Because Plaintiff has sufficiently stated a viable claim of copyright infringement against the identified IP address[] and its placeholder-defendant subscriber[], Plaintiff should be provided with discovery to further assist it in identifying the underlying wrongdoer." *Id.* at *7.

### B.   The Timing of the Request Favors Granting Relief.

The Third Circuit has instructed that, "[i]f discovery is sought by a plaintiff, as it was here, and if it would aid in the identification of responsible defendants or the lack thereof, district courts should strongly consider granting it." *Alston*, 363 F.3d at 233 n.6.  Thus, this factor "weighs in favor of permitting expedited discovery of the limited type Plaintiff seeks[.]" *Judge Hillman's Opinion*, 2020 WL 3567282 at *8; *see also D.C. Circuit Opinion*, 964 F.3d at 1207.

### C.   The Request is Narrowly Tailored and Identifies the Limited and Specific Information Sought.

Plaintiff's request is also narrowly tailored and sufficiently specific.  The "specificity" required by this factor refers to "[the] specificity of the *discovery request*." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010) (emphasis added).   To satisfy this element a plaintiff must seek "concrete and narrow information:  the name and address of the subscriber associated" with the IP address being used to commit the alleged infringement. *John Wiley & Sons, Inc. v. Doe Nos.*

*1-30,* 284 F.R.D. 185, 190 (S.D.N.Y. 2012).  "Courts have labeled the subscriber's identity and address as 'highly specific'" in these cases.  *Malibu Media, LLC v. Doe,* No. 18-766, 2018 WL 2386068, at *3 (D. Conn. May 25, 2018) (citation omitted).

"Plaintiff seeks only the name and permanent address of the IP address subscriber[].  Such identifying information is narrowly tailored, requesting no more than would be required to identify the relevant individual."  *Judge Hillman's Opinion,* 2020 WL 3567282 at *8.  "The subpoena is specific enough to give rise to a reasonable likelihood that information facilitating service upon proper defendants will be disclosed if the ISPs comply."  *Raw Films, Ltd. v. John Does 1-15,* No. 11-7248, 2012 WL 1019067, at *7 (E.D. Pa. Mar. 26, 2012).

Although Judge Hillman did not reach the factual errors in *Judge Schneider's Opinion,* the speculative concern raised by Judge Schneider that an IP address might be dynamic (*i.e.,* not assigned permanently/statically) does not justify denying this discovery request.  Not only is that concern premature as a matter of law, *see Judge Hillman's Opinion,* 2020 WL 3567282 at *6–7, but Plaintiff's application seeks to subpoena the ISP for the historical identity of the subscriber at an exact minute and second when VXN recorded that infringement occurred—precisely to negate any argument (or risk) that the IP address might be dynamic.  Judge Schneider's conclusion that ISPs respond to subpoenas with the "*current* subscriber to the listed IP address" who "is not necessarily the same person who subscribed to the IP address

[on the date of infringement],"*Judge Schneider's Opinion*, 2019 WL 5446239 at *2 (emphasis added), was not only speculative, but contrary to all of the evidence in the record. *See Strike 3 Holdings, LLC v. Doe*, No. 18-12585, ECF No. 31-1 at p.25–29 (appeal brief discussing this clear factual error). In this matter, Plaintiff seeks to subpoena the ISP to learn the identity of the subscriber assigned the IP address on July 11, 2020 at 12:56:45 UTC (Universal Time Coordinated), when infringement of Work #1 was recorded by VXN. *See* Paige Decl., ¶¶16–28; ECF Nos. 1 ¶¶ 41–42; 1-1.

In short, Plaintiff's proposed discovery—a subpoena for the identity of a specific individual, assigned a specific IP address, on a specific date and time (recorded down to the minute and second) when infringement occurred—is narrowly tailored and sufficiently specific.

### D. The Purpose of the Requested Discovery and the Need for the Information Sought to Advance the Claim Favors Granting Relief.

"[T]he purpose of the requested discovery[] is clear and narrow: to identify the subscriber[] of [the] IP address[] connected with various copyright infringement activities." *Judge Hillman's Opinion*, 2020 WL 3567282 at *8. "Binding Circuit-level precedent advises courts to grant limited discovery in circumstances where a plaintiff may not otherwise have access to means for identifying John Doe defendants." *Id.* (citing *Alston*, 363 F.3d at 233 n.6).

Similarly, the need for this "crucial evidence" cannot be understated. "[T]he identity of the defendant is critical to the ability of the plaintiff to serve process on defendant and proceed with the litigation." *Malibu Media, LLC v. John Does 1-15*, No. 12-2077, 2012 WL 3089383, *8 (E.D. Pa. July 30, 2012); *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 566 (S.D.N.Y. 2004). And, "[o]nce in possession of Defendant's name and address, Plaintiff can investigate and confirm it has a good faith basis for believing it has found the infringing party." *Strike 3*, 2019 WL 4855039 at *2. Without receiving Doe's identity—to complete its investigation and, if appropriate, to amend its complaint and serve process—Plaintiff cannot proceed with its lawsuit to protect its copyrights. "[T]he protections provided to these copyright holders by the Copyright Act would evaporate, unless copyright holders are permitted to engage in this discovery." *W. Coast Prods., Inc. v. Does 1-1,434*, No. 11-55, 2012 WL 10132002, at *4 (D.D.C. Aug. 6, 2012); *see also Strike 3*, 2019 WL 4745360 at *6 ("Plaintiff must be able to enforce its rights[.]") (Bongiovanni, J.). "Unless the rules are construed to allow some reasonable method to determine against whom that claim should be asserted, Plaintiff will have presumably suffered a federal statutory wrong with no remedy. That is not just." *Judge Hillman's Opinion*, 2020 WL 3567282 at *11.

### E.   The Discovery Does Not Burden Doe or Require Doe to Respond in an Expedited Manner.

These factors do not preclude authorizing this discovery because, "[i]n the most literal sense, the discovery sought imposes no burden at all on Defendant[], as it [is sought] from and will be produced by a third-party, the ISP." *Judge Hillman's Opinion*, 2020 WL 3567282 at *8.   Courts within this District routinely deny motions by doe defendants to quash court-authorized ISP subpoenas on the grounds of "undue burden," since they impose no burden on the doe defendants. *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 12-07789, 2014 WL 229295, at *1 (D.N.J. Jan. 21, 2014) ("Because the subpoena is directed to a third party, [Doe] cannot establish that it imposes an undue burden upon him.") (Arleo, J.).

### F.   There Are No "Alternative Means" to Uncover Doe's True Identity.

At this early stage in litigation, Plaintiff has a limited view into Doe's true identity, since it only knows the offending IP address and the works they downloaded and distributed, but cannot uncover Doe's name and address without court assistance.[11]   "BitTorrent software is 'largely anonymous' except insofar as it

---

[11]   VXN has recorded numerous instances of this IP address sharing not only Plaintiff's works, but the works of others (*e.g.*, movies, television shows, music, software, and books).   Once Plaintiff obtains Doe's identity, its investigators can review publicly available data to determine whether a good faith basis exists to further identify Doe, or someone else with sufficient access to the IP address, as the infringer. *See Rahuse*, 2015 WL 2231853 at *4 (Linares, J.).   However, it is not

requires a user to broadcast the user's IP address," *John Wiley & Sons, Inc.*, 284 F.R.D. at 190, and, therefore, "Plaintiff can identify Defendant only through his IP address[.]" *Strike 3 Holdings, LLC v. Doe*, No. 18-2648, 2019 WL 78987, at *1 (S.D.N.Y. Jan. 2, 2019); *see also BMG Rights Mgmt.*, 881 F.3d at 299 ("[O]nly the ISP can match the IP address to the subscriber's identity[.]"); Paige Decl. at ¶ 28, Ex. B.

> BitTorrent's appeal to users is the large degree of anonymity it provides.  Absent a Court-ordered subpoena, many of the ISPs, who qualify as 'cable operators' for purposes of 47 U.S.C. § 522(5), are effectively prohibited by 47 U.S.C. § 551(c) from disclosing the identities of [the defendants] to Plaintiff.  Thus, without granting Plaintiff's request [for early discovery], [Defendant] cannot be identified or served and the litigation cannot proceed.

*Strike 3 Holdings, LLC v. Doe*, No. 18-569, 2018 WL 4109394, at *2 (W.D.N.Y. Aug. 28, 2018) (citations and internal quotation marks omitted); *see also Call of the Wild Movie, LLC v. Does 1-1,062*, 770 F. Supp. 2d 332, 352–53 (D.D.C. 2011).

In short, there are no "other means by which Plaintiff could gather the information it seeks, and the narrow nature of its request[] appear[s] to provide the

---

possible to work backwards, and use this evidence to further identify the anonymous infringer without first receiving Doe's identity.  *See, e.g.*, *Strike 3 Holdings, LLC v. Doe*, No. 18-5566, ECF No. 7, 33, 35 (D.N.J. Sept. 29, 2018) (amended complaint alleging, among other things, that defendant is a dentist who owns a dental practice and used BitTorrent to download the ADA manual on how to run a dental practice); *Strike 3 Holdings, LLC v. Doe*, No. 18-06488, ECF No. 15, 37 (N.D. Ill. Dec. 20, 2018) (amended complaint alleging, among other things, that defendant tweeted at Strike 3 that he was a fan of Strike 3 works and requested Strike 3 to cast a specific actress in upcoming movies).

only reasonable way to obtain it.  Such further militates in favor of granting the relief sought."  *Judge Hillman's Opinion*, 2020 WL 3567282 at *9 (citation omitted).  A court order authorizing Plaintiff to serve a limited subpoena on the ISP is the only means available for Plaintiff to learn the subscriber's identity.  *See* 47 U.S.C. § 551.

### G.   Doe's Minimal Privacy Interest Is Substantially Outweighed by Plaintiff's Interest in Protecting Its Copyrights.

Finally, at this juncture, Doe's privacy interest is "truly speculative," *Judge Hillman's Opinion*, 2020 WL 3567282 at *11, and—at best—minimal and outweighed by Plaintiff's interest in protecting its copyrights.  While "[s]ome courts have gone so far as to find that internet users have constitutional privacy interests in their internet browsing and file-sharing . . . these privacy interests must not be used as a shield behind which internet users can commit unabated, legally actionable behavior."  *Id.* at *10 (citations omitted).  "In general, privacy rights do not grant users a license to infringe on copyrighted material. Thus, to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by subscribers or other persons, it is unprotected by the First Amendment."  *Id.* (citation omitted); *see also U.S. v. Christie*, 624 F.3d 558, 574 (3d Cir. 2010) (holding that subscribers do not have a Fourth Amendment privacy interest in their IP address).

Although the CCPA recognizes that subscribers have a privacy interest in not having their identities publicly disclosed, the Act expressly recognizes it is a qualified interest, and specifically provides that courts can order that identifying

31

information be disclosed.  *See* 47 U.S.C. § 551(c).  Importantly, this privacy interest does not foreclose the requested discovery, it merely requires that a Court determine whether it is appropriate to allow the subpoena to the ISP, which may be done subject to an appropriate "limited protective order" that "balances the Plaintiff's right to pursue its claims and the concomitant right of access to court proceedings enjoyed by the public with . . . legitimate privacy interests" of Doe.  *Judge Hillman's Opinion*, 2020 WL 3567282 at \*11; *Strike 3 Holdings, LLC v. Doe*, 330 F.R.D. 552, 555 (D. Minn. 2019) (reversing magistrate judge's decision that privacy concerns required denial of request to serve subpoena prior to a Rule 26(f) conference); *see also CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("There is no privilege or restriction on releasing customer records to a nongovernmental entity pursuant to a court order") (citing 47 U.S.C. § 551(c)(2)(B)).

Indeed, had the Magistrate Judge permitted Plaintiff to be heard, its proposed order would have included all the protective provisions that Judge Schneider instituted—at Plaintiff's suggestion[12]—in the matters remanded to him by Judge Hillman.  *See* Exhibit D.  As other courts in this District have correctly recognized when denying motions to quash court-authorized ISP subpoenas in similar matters, Plaintiff's right to protect its copyrights outweighs a subscriber's "diminished" right to privacy, *Strike 3 Holdings, LLC v. Doe*, No. 18-14138, ECF No. 15 at \*2 (D.N.J.

---

[12] *See, e.g.*, No. 18-12585, ECF Nos. 37, 38.

June 27, 2019), and permitting Doe to proceed anonymously further mitigates this concern. *Strike 3 Holdings, LLC v. Doe*, No. 18-12609, ECF No. 16 at *5 (D.N.J. June 27, 2019); *see also Strike 3*, 2019 WL 78987 at *4 (denying motion to quash and noting that the "protective order has fairly balanced Plaintiff['s] and Doe's interests").

Plaintiff requests only the same rights and abilities to protect its copyrighted works that are available to all other copyright holders. The fact that Doe has chosen to hide behind an IP address while stealing—and then distributing—Plaintiff's copyrighted works is not a valid basis for the Court to throw up its hands and proclaim BitTorrent copyright infringement is *de facto* legal because the Court is powerless to stop it. That is not true. There is a clear and well-established standard under which this Court can—and should—assist Plaintiff in identifying Doe so that it can protect its copyrights. *See Alston*, 363 F.3d at 233 n.6. Plaintiff clearly can meet that standard here, and it was error for the Magistrate Judge to deny Plaintiff the opportunity to even be heard on this discovery motion, "clos[ing] the courthouse doors before Strike 3 can step inside." *D.C. Circuit Opinion*, 964 F.3d at 1212. The Magistrate Judge's Text Order is "not just" and must be reversed. *Judge Hillman's Opinion*, 2020 WL 3567282 at *11.

## CONCLUSION

For the foregoing reasons, Plaintiff Strike 3 Holdings, LLC, respectfully requests that the Court reverse the Magistrate Judge's Text Order denying leave to file a motion to conduct limited early discovery, subject to a protective order.

DATED: September 7, 2020                  Respectfully submitted,

                                          By:   */s/ John C. Atkin, Esq.*
                                                JOHN C. ATKIN